857 A.2d 615

UNINSURED EMPLOYERS' FUND

v.

Gerald E. DANNER.

No. 1315, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Sept. 8, 2004.

James W. Himes (J. Joseph Curran, Jr., Atty. Gen., on the brief), Towson, for Appellant.

Frederick W. Miller (Susan S. Miller, on the brief), Baltimore, for Appellee.

DEBORAH S. EYLER, KRAUSER, CHARLES E. MOYLAN, Jr. (retired, specially assigned), JJ.

MOYLAN, Judge.

In this appeal from the Workers' Compensation Commission, by way of the Circuit Court for Baltimore County, the issue is not the correctness of the award of benefits to the claimant, nor is it the unquestioned obligation of the Uninsured Employers' Fund to step into any ultimate breach left by an uninsured employer. The issues before us are 1) what antecedent events trigger the obligation on the Fund to act; 2) what is the precise moment when that obligation on the Fund accrues; and 3) what enforcement mechanisms, if any, are possessed by the Commission if the Fund is unduly slow in acting.

## The Claim

The appellee, Gerald E. Danner, was working as a carpenter when, on February 16, 2001, he was severely injured on a job at 300 Cathedral Street in Baltimore City. He was taken to the University of Maryland Shock Trauma Unit, where he underwent surgery for a deep laceration to his left arm. As a result of the injury, he has lost the substantial use of his left arm and hand.

On April 18, 2001, Danner filed a claim with the Maryland Workers' Compensation Commission. At the time of the accident, Danner was employed by Timothy Stivers, an employer who did not maintain workers' compensation insurance. Accordingly, Danner was presented by the Commission with an Order for Information, requiring him to fill out a Claimant's Questionnaire and to send a copy of his answers both 1)

to the Commission and 2) to the Uninsured Employers' Fund, the appellant in this case. Danner did so as of June 11, 2001.

On June 6, 2002, a hearing on Danner's claim was held before the Commission. At that hearing, the Fund participated. The Fund had received legal notice of the hearing on March 19, 2002, and was actually listed as the "Insurer" for the otherwise uninsured Timothy Stivers. The Fund was represented by an Assistant Attorney General, who cross-examined Danner on behalf of the Fund. On June 14, the Commission issued an Award of Compensation to Danner. In the opinion announcing that award, the Commission made the following pertinent findings of fact:

A. *Stivers was an uninsured employer;*

B. *Claimant sustained an accidental injury arising out of and in the course of his employment by Stivers* on February 16, 2001;

C. Claimant's disability is a result of the aforesaid accidental injury;

D. As a result of the accidental injury, Claimant was temporarily totally disabled from February 16, 2001 to the present and continuing;

E. Claimant's average weekly wage was $600.00;

F. Claimant be paid temporary total disability benefits at the rate of $400.00 a week, beginning February 16, 2001 and continuing;

G. The Employer pay causally related medical expenses in accordance with the Medical Fee Guide of the Commission; and,

H. The Commission reserves the jurisdiction to hold further hearings on permanent disability upon request.

(Emphasis supplied).

On the very day the award was issued, June 14, Danner 1) notified Stivers of the award, 2) sent Stivers a copy of the award, and 3) demanded payment under the award. When more than thirty days went by with neither payment nor any response forthcoming from Stivers, Danner made a request to the Fund to pay him in accordance with the June 14 award by

the Commission. The first request for payment by the Fund was made by a letter dated July 17, 2002. Follow-up letters of request were sent on August 23 and September 25.

Although present and participating at the June 6, 2002, hearing before the Commission, the Fund never appealed the June 14, 2002, award of compensation to Danner. The Fund never filed any issues with the Commission with regard to the award of temporary total disability benefits to Danner. The entitlement of Danner to receive the payment of benefits from someone was undisputed. The Fund, nonetheless, refused to make any payment to Danner.

### The Penalty under § 9–728

Aggrieved at the non-payment, Danner brought his plight to the attention of the Commission, which conducted a hearing on November 26, 2002. The Commission posed the issue before it as, "Is the claimant entitled to sanctions for the Uninsured Employer Fund's failure to pay compensation?" Applying Maryland Code, Labor and Employment Article, § 9–728, to the Fund, the Commission imposed sanctions in its order of December 11, 2002.

> *The Commission finds* on the issue presented that the answer is "YES"; and finds *that the Uninsured Employer's Fund* shall pay unto Frederick W. Miller, Esquire, counsel for the claimant, a counsel fee in the amount of $500.00; and *shall pay unto the claimant a 40% penalty on all moneys due the claimant* beginning February 16, 2001 and ending November 12, 2002.
>
> It is, therefore, this 11th day of December, 2002, by the Workers' Compensation Commission ORDERED that *the Uninsured Employer's Fund is hereby assessed penalties* as hereinabove set forth; and further ORDERED that the above-entitled claim be reset only upon request.

(Emphasis supplied).

### The Appeal to the Circuit Court

The Fund appealed that order to the Circuit Court for Baltimore County. After unrecorded argument, the court granted Danner's motion for summary judgment and denied a

cross-motion for summary judgment by the Fund. In its rulings, the Circuit Court did two things. It directed the Fund to pay to Danner the benefits that he had been awarded by the Commission. It also affirmed the Commission's imposition of penalties on the Fund for its dilatoriness in making payments to Danner. This appeal is from both of those rulings by the Circuit Court.

### The Issues on Appeal

The Fund has expressly raised two contentions, both based, however, on a single underlying rationale.

1. The court erred when it ordered appellant to pay compensation benefits previously awarded when the Commission award had not ordered appellant to pay benefits and when *appellant's unique statutory authority exempts it from a duty to pay while an issue is still awaiting resolution by the Commission, or while an appeal is pending.*

2. The court erred when it affirmed the Commission's imposition of penalty and attorney's fees on appellant for failure to pay compensation benefits previously awarded because *the Fund is exempt from any obligation to pay benefits pending appeal as long as an issue is still pending before the Commission or while an award is pending on appeal in the circuit court.*

(Emphasis supplied).

One of the two rationales offered by the Fund for the first contention and the only rationale offered by the Fund for the second contention is that

THE FUND IS EXEMPT FROM ANY OBLIGATION TO PAY BENEFITS PENDING APPEAL AS LONG AS AN ISSUE IS STILL PENDING BEFORE THE COMMISSION OR WHILE AN AWARD IS PENDING ON APPEAL IN THE CIRCUIT COURT.

### The Basis of the Fund's Obligation
### To Pay Compensation Benefits

We consider first the Fund's contention that it should not have been ordered to pay benefits because it had not been

named in the Commission's award of June 14, 2002, as the party required to make payments. Of course, it had not. The party named as required to make payments was Timothy Stivers. The Commission had expressly found that Stivers was Danner's employer at the time of the accident and further found that Stivers was an uninsured employer.

The obligation of the Fund to assume responsibility for paying the benefits arose not from the Commission award *per se* but from § 9–1002, which provides in pertinent part:

### § 9–1002. Payment from Uninsured Employers' Fund.

(a) *In general.*—An award is payable out of the Fund in accordance with this section.

(b) *Default.*—Unless an application for review has been timely filed under subsection (g) of this section or a notice of appeal timely served, *an employer is in default on a claim* by a covered employee . . . *if the employer fails to:*

. . . .

(3) *pay compensation in accordance with an award within 30 days after the date of the award.*

. . .

(e) *Application for payment from Fund.—If the employer does not pay the award* and does not notify the Commission of its objection to the award in accordance with subsection (d) of this section, *the covered employee . . . may apply to the Director for payment from the Fund.*

(f) *Payment or application for review. On receipt of an application for payment, the Fund may:*

(1) *pay the award; or*

(2) *apply for review under subsection (g) of this section.*

(Emphasis supplied).

In this case, it is undisputed that Stivers, who had been found to have been Danner's uninsured employer, 1) did not apply for a review or rehearing by the Commission pursuant to subsection (g), 2) did not file an appeal from the Commission's decision, and 3) did not pay the award within thirty days

after the date of the award. The uninsured employer was, therefore, *ipso facto* in default.

It is also unquestioned that Danner, in the wake of that default, properly and timely applied to the Fund for payment. It is further undisputed that the Fund 1) had not applied to the Commission for review under subsection (g) of any of the findings pertinent to the award of benefits to Danner and 2) did not pay the award. The fact that the Fund had not been named in the Commission's decision of June 14, 2002, is immaterial. Its obligation to pay the benefits was predicated on § 9–1002(f) and on events (the default by Stivers) that happened after the award had been made.

## When Does the Fund's Obligation Accrue?

The Fund's primary argument as to why it was not obligated to pay the benefits to Danner as of July of 2002 is that one of the issues that had originally been before the Commission at the June 6, 2002, hearing had not yet been finally resolved. In its opinion of June 14, 2002, to be sure, the Commission had listed six issues that were before it. It resolved all five of the issues pertinent to whether Danner was entitled to an award of benefits. It decided nothing with respect to the sixth issue, which was

6. Is NWJ Management Company, Inc. a statutory employer?

The "unresolved" issue was whether the NWJ Management Company, apparently as the principal contractor for the job at 300 Cathedral Street where Danner's accident occurred, was the statutory employer of Danner within the contemplation of § 9–508 and was, thereby, liable, in whole or in part, for the payment of benefits to Danner. At the hearing on June 6, 2002, the Fund was not prepared to go forward on that issue. It requested the Commission to reserve its judgment on that question.

Although the Commission's decision on June 14 that Stivers was Danner's employer and was responsible for the payment

of benefits to Danner would appear to have resolved the issue, a further hearing was nonetheless scheduled for September 11, 2002. On September 13, the Commission, as a result of that hearing, issued the following order:

Hearing was held in the above claim at Baltimore, Maryland on September 11, 2002 on the following issues:

1. Is NWJ Management Company, Inc. a statutory employer in this claim?

2. Attorneys fee/costs

3. Penalties

The Commission finds on the first issue that the answer is "NO"; and finds on the remaining issues that the claim for attorneys fee and penalties is denied.

In a totally separate case, Case No. 03–C–02–11282, the Fund has appealed that order to the Circuit Court for Baltimore County.

■ The Fund's reliance on that yet unresolved appeal of a collateral issue as a justification for delaying the payment of benefits to Danner is without merit. The determination that Danner was entitled to an award for temporary total disability was a final order within the contemplation of the Workers' Compensation Law without reference to the ancillary question of whether the NWJ Management Company was a statutory employer under § 9–508. As Chief Judge Gilbert pointed out for this Court in *Great American Insurance Co. v. Havenner*, 33 Md.App. 326, 332, 364 A.2d 95 (1976):

We think the term "final order" or "final action," within the ambit of the Workmen's Compensation Law, means an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act. *Flying "A" Service Station v. Jordan*, [17 Md.App. 477, 302 A.2d 650 (1973)]; Walterscheid, *"Final Judgment Rule" in Workmen's Compensation Cases*, 8 Natural Resources Journal 522, 528 (1968). *Thus,*

*the award of temporary total disability is a "final order"*
*and appealable.*

(Emphasis supplied).

The Fund tortures the language of § 9–1002(b), as it argues 1) that it does not assume the obligation to make payment until the employer (Stivers) is actually in default and 2) that the employer cannot be "in default" while an issue remains not yet finally resolved.

### An Appeal Does Not Stay The Obligation to Pay Benefits

It is clear, however, that once it has been determined that an employee is entitled to benefits, the purpose of Title 9 generally, Workers' Compensation, and of Subtitle 10, the Uninsured Employers' Fund, is to provide timely relief to the injured employee even pending the determination of ultimate responsibility for the payment of the benefits among 1) the employer, 2) the insurer, 3) the uninsured employer, 4) the statutory employer, or 5) the Fund. Such litigation could drag on for months, if not years, but the injured employee is in immediate need of daily sustenance. In *Uninsured Employers' Fund v. Lutter*, 342 Md. 334, 345, 676 A.2d 51 (1996), the Court of Appeals made the legislative focus clear.

It is obvious that *the legislature's purpose* in creating the Fund *was to protect injured workers* whose employers failed, either willfully or negligently, to carry workers' compensation insurance for them.

(Emphasis supplied).

In *Uninsured Employers' Fund v. Hoy*, 23 Md.App. 1, 6, 325 A.2d 446 (1974), Chief Judge Orth described the purpose of the Fund as one of providing quick relief to the injured employee.

*We find the legislative direction to be unequivocal.* It clearly provides that the Commission, ". . . upon rendering a decision with respect to any claim for compensation against an uninsured employer . . . shall . . ." impose the designated assessments. *The imposition of the assessments is not predicated upon any contingency but is mandatory*

*when the Commission renders a decision with respect to any claim for compensation against an uninsured employer.*

(Emphasis supplied).

This Court pointed out that the primary concern of the law is with the rights of the claimant and that the purpose of the Fund is to expedite the satisfaction of those rights.

The provisions designate what awards are payable from the Fund and the procedure for payment. *They concern the rights of the claimant and the obligation of the Fund; they do not go to the rights or obligations of employers. . . .* Patently, *the purpose of the Fund is to provide for the payment of awards against an uninsured defaulting employer.*

23 Md.App. at 7, 325 A.2d 446 (emphasis supplied).

In furtherance of that policy of providing quick relief for the injured employee, § 9–741 provides:

An appeal is not a stay of:

(1) an order of the Commission requiring payment of compensation.

In *Bayshore Industries v. Ziats,* 229 Md. 69, 77, 181 A.2d 652 (1962), Chief Judge Brune explained that the legislative purpose in not permitting a stay is "that of affording day to day support to injured employees."

In *Petillo v. Stein,* 184 Md. 644, 649, 42 A.2d 675 (1945), the Court of Appeals stressed that the legislative purpose in forbidding a stay of the payment of benefits is to insure the speedy and uninterrupted payment of benefits.

Such authority in the Legislature could not be denied consistently with *the principle upon which the general validity of the Workmen's Compensation Act had been adjudicated. "Its design was to insure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal.*

In providing that an appeal should not be a stay, the statute was simply adopting *a necessary expedient to accomplish one of the important purposes for which it was enacted."* (Emphasis supplied).

If the employer, Stivers himself, could not have stayed the payment of benefits even by appealing the intrinsic merits of the award, *a fortiori,* the Fund may not stay the payment by appealing the more ancillary question of whether an alleged statutory employer (NWJ) should step into the shoes of the uninsured employer (Stivers) before the Fund itself is called upon to fill the breach. The uninsured employer (declared by the Commission to be Stivers) was obligated to pay benefits within 30 days of the award's being made, even if an appeal was pending or would in the future become pending. If that uninsured employer defaulted, as he did, the Fund was obligated to assume the payments forthwith. If an appeal by a direct obligor will not stay the payment of compensation, neither will an appeal by a derivative obligor.

To the extent to which an appeal by the Fund as to the statutory employer status of the NWJ Management Company might be successful, moreover, the Fund will be fully protected by its entitlement to be fully reimbursed by NWJ for any payments to Danner which the Fund had advanced. Section 9–1003 provides:

(a) *In general.—If the Fund makes payment to a covered employee* or the dependents of a covered employee as directed by the Commission, *the Fund is subrogated to the rights of the covered employee* or dependents against the uninsured employer.

(b) *Civil action; criminal prosecution.—The Fund may:*

(1) *institute a civil action to recover the money paid under the award;*

(2) refer the matter to the appropriate authority for prosecution under § 9–1108 of this title; or

(3) do both.

(Emphasis supplied).

Section 9–1004(a) further provides:

(a) *In general.—If the Fund pays compensation to a covered employee* or the dependents of a covered employee, *the Fund is subrogated to the rights of the uninsured employer under this title.*

(Emphasis supplied).

The bottom line is that employers, insurers, and the Fund are all better able to bear the cost of the law's delay than are injured workers, and it is this animating spirit that pervades the Workers' Compensation Law. The gift of one's daily bread need not abide a final judgment in *Jarndyce v. Jarndyce.* We affirm the decision of the Circuit Court that the Fund was obligated to pay the benefits owing to Danner and, indeed, had been so obligated since July of 2002.

## Assessing a Penalty Against the Fund

When this case went back to the Commission on November 26, 2002, for a hearing on whether Danner was entitled to sanctions against the Fund for its failure to pay him the compensation awarded the preceding June 14, the Commission ordered the Fund to "pay unto the claimant a 40% penalty on all moneys due the claimant beginning February 16, 2001 and ending November 12, 2002." The Commission applied against the Fund the penalty provision spelled out in § 9–728(b).

*If the Commission finds that an employer or its insurer has failed,* without good cause, *to begin paying an award* within 30 days after the later of the date that the award is issued or the date that payment of the award is due, *the Commission shall assess against the employer or its insurer a fine* not exceeding 40% of the amount of the payment.

(Emphasis supplied).

On this contention, we agree with the Fund, but not for the primary reason argued by the Fund, that this penalty should not have been assessed against it.[1] The Fund argued against

---

1. The fund does belatedly raise, for the first time in its reply brief, the rationale we rely upon for finding in its favor on the penalty issue.

the penalty on the merits of its non-payment of benefits. It claimed that it was "exempt from any obligation to pay benefits pending appeal as long as an issue is still pending before the Commission or while an award is pending on appeal in the circuit court." It asserted the pendency of its appeal on the statutory insurer issue was the "good cause" that excused it from any penalty for non-payment. We have already fully analyzed and rejected that argument in disposing of the Fund's first contention. As soon as it was clear that Stivers had let 30 days go by without paying benefits, the Fund should promptly have assumed that responsibility.

■ We hold, however, that the penalty provisions of § 9–728 do not apply to the Fund. Title 9, Workers' Compensation Law, generally, as well as Subtitle 7, including § 9–728, specifically, are exclusively statutory phenomena. Their content and their coverage are whatever the Legislature has clearly stated them to be. They do not have the growth potential of common law principles. That the Fund failed to do what it should have done does not, *ipso facto* confer on the Commission the authority to impose penalties on the Fund.

The parties expressly vulnerable to a possible fine or penalty pursuant to § 9–728 are 1) "an employer" and 2) "its insurer." The Fund is neither of them. Section 9–728 does not at any place refer to the Fund. The "Fund" is defined by § 9–1001(d):

"Fund" means the Uninsured Employers' Fund.

The Fund is its own distinct and clearly labeled entity. It is not a sub-specimen of "insurer"; nor is it even a part of Subtitle 4, dealing with "Insurance Coverage." The Fund was created by and its contours have been fully fleshed out by Subtitle 10, dealing not with insurers but with "Uninsured Employers."

It further goes without saying that the Fund is not an "employer," insured or uninsured. Section 9–201 refers to employers generally.

This title applies to the following employers:

(1) each person who has at least 1 covered employee; and

(2) each governmental unit or quasi-public corporation that has at least 1 covered employee.

An uninsured employer is defined by § 9–1001(e):

"Uninsured employer" means an employer who fails to secure payment of compensation to the covered employees of the employer in accordance with § 9–402 of this title.

It is Subtitle 4 that deals with insurance coverage and § 9–401(b) defines precisely what an "insurer" is within the contemplation of Workers' Compensation Law and the Fund clearly does not fit within that definition.

"Authorized insurer" means a stock corporation or mutual association that is authorized under the Insurance Article to provide workers' compensation insurance in the State.

Self-evidently, moreover, the Fund could not, at the risk of punishable failure, be subject to the same time restraints that apply to "an employer or its insurer," for the obvious reason that the Fund's obligation, under § 9–1002(e), to assume the compensation obligation does not "kick into gear" until the antecedent failure of the "employer or its insurer" to pay benefits is already a *fait accompli,* followed, at some unspecified later time, by the employee's application to the Fund for payment. Clearly the time limits established by § 9–728 were not intended to apply to the Fund and cannot logically apply to it.

Whatever the equitable merit of the penalty assessment against the Fund may have been in some abstract or higher sense is immaterial. There is simply no statutory authority (whether there should be is a legislative and not a judicial concern) for the Commission to assess a § 9–728 penalty against the Fund. The Commission, a creature of statute, can do only those things the Legislature has specifically authorized it to do. It is not a knight-errant with inherent power to right every Worker's Compensation wrong. There are dragons that may go unslain.

## The Assessment of an Attorney's Fee

In its order of December 11, 2002, taking the Fund to task for its failure to pay the benefits, the Commission also ordered the Fund to pay to Danner's attorney "a counsel fee in the amount of $500.00" The Fund also appeals that part of the order.

That assessment was pursuant to § 9–734, "Frivolous proceedings," which provides:

> If the Commission finds that a person has brought a proceeding under this title without any reasonable ground, the Commission shall assess against the person the whole cost of the proceeding, including reasonable attorney's fees.

The applicability of § 9–734 to the Fund is far more problematic than was the clear non-applicability of § 9–728. For starters, the word "person," undefined in the statute, is far more generic and widely embracing than are such terms as "employer" and "insurer." It would seem, at least at surface glance, that the Fund would be covered by the provisions of § 9–734. Although the Fund, to be sure, was not the "person [bringing] the proceeding" (it was brought by the claimant, Danner), *Stevens v. Rite–Aid Corporation,* 102 Md.App. 636, 643, 651 A.2d 397 (1994), *aff'd,* 340 Md. 555, 667 A.2d 642 (1995), makes it clear that the assessment of attorney's fees under § 9–734 is

> a sanction or penalty for filing frivolous proceedings *or willfully disregarding rulings by the Commission.*

(Emphasis supplied). Thus, the responding party to a Commission order, just as surely as the moving party, may be guilty of the unreasonable behavior that gives rise to a "frivolous proceeding" within the contemplation of Rule 9–734. The rule applies to the pitcher and the catcher alike.

In its *Stevens v. Rite–Aid* opinion, 340 Md. at 561–63, 667 A.2d 642, the Court of Appeals pointed out that both present § 9–734 and present § 9–731 were, in 1991, taken, without any substantive change, from the predecessor Art. 101, § 57. In fleshing out § 9–734's meaning of "person," the predecessor provision, as well as the present § 9–731, makes undifferenti-

ated reference to "any party in interest." At a proceeding before the Commission, the Fund indisputably may be a party in interest.

It is unnecessary, however, to resolve the issue of the applicability of § 9–734 to the Fund because we hold that the Fund's recalcitrance did not, in any event, give rise to a frivolous or unreasonable proceeding within the contemplation of Rule 9–734. The Fund's position that it was not required to pay Danner's benefits until all issues arising out of Danner's claim had been ultimately resolved was, as we have held, without ultimate merit. It was not, however, so implausible or preposterous a position as to make the hearing of November 26, 2002, frivolous or unreasonable. It was wrong, but it was neither unconscionable nor ridiculous. It was, at least, an arguable position to take. We have found no reported Maryland decision that had ever dealt with this precise situation, so it cannot be said to have been well settled. It was a legal wrinkle that was worthy of being ironed out, as it now has been. Frivolousness, in contrast to Caesar's ambition, should be made of less "sterner stuff."

**JUDGMENT AFFIRMING OBLIGATION OF UNINSURED EMPLOYERS' FUND TO PAY COMPENSATION BENEFITS TO CLAIMANT AFFIRMED; JUDGMENT AFFIRMING IMPOSITION OF PENALTIES AND ASSESSMENT OF ATTORNEY'S FEES REVERSED; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.**