REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1215

September Term, 2013

INJURED WORKERS' INSURANCE FUND

v.

UNINSURED EMPLOYERS' FUND, ET AL.

Eyler, Deborah S.,
Hotten,
Reed,

JJ.

Opinion by Eyler, Deborah S., J.

Filed: January 30, 2015

The Workers' Compensation Commission ("the Commission") awarded temporary total disability benefits to claimant Xiong Yao. Yao had two employers. The Injured Workers' Insurance Fund ("IWIF"), the appellant, insured one of the employers. Ultimately, it paid the entire award. Yao's other employer was uninsured.

In two orders, the Commission ruled that because one of Yao's employers was uninsured, the Uninsured Employers' Fund ("the Fund"), the appellee, was jointly and severally liable with IWIF for the award. It ordered the Fund to reimburse IWIF for one-half of the benefits paid. On judicial review of that decision, the Circuit Court for Baltimore County overturned the Commission orders, ruling that the Fund could not be ordered to reimburse IWIF.

IWIF appeals, presenting two questions for review, which we have combined and rephrased as follows:

> Did the Commission have authority to order the Fund to reimburse IWIF for benefits IWIF paid to Yao?

We answer this question in the negative and shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On June 24, 2005, Yao was working as a construction subcontractor at the Miyako Japanese Steakhouse in Ocean City when a propane gas explosion caused him to sustain burns to his entire body. Bo Hao Zhu and Qihua Chen were the owners of the restaurant.

Zhu had a workers' compensation insurance policy issued by IWIF. IWIF is an independent, but statutorily created, insurance company that is required to provide workers' compensation insurance to any employer in the state that is unable to obtain a policy in the

private sector. *See* Md. Code (1991, 1999 Repl. Vol., 2007 Supp.), §§ 10-101 *et seq.* of the

Labor and Employment Article ("LE").[1] Chen was uninsured.

On August 29, 2007, Yao filed a claim with the Commission for workers'

compensation benefits arising out of the propane explosion accident. He identified Zhu and

Chen as his employers.

On April 23, 2009, the Commission held a hearing on nine issues, including the

identity of Yao's employer(s) at the time of the accident. On May 13, 2009, the Commission

issued an award of compensation to Yao ("May 2009 Award"). As relevant here, the

Commission found that Yao had been temporarily totally disabled from June 24, 2005, until

October 13, 2006, as a result of the accident; that Zhu was *not* Yao's employer; that Chen

*was* Yao's employer; and that Chen was uninsured. It ordered Chen to pay Yao's causally

related medical expenses and temporary total disability benefits ("TTD benefits") in the

amount of $417 per week for the period of disability.[2,3]

On May 29, 2009, the Fund intervened. The Fund is a statutory fund of last resort

created by LE sections 9-1001, *et seq.*, to pay a workers' compensation award to a covered

---

[1]IWIF is now being phased out and replaced by the Chesapeake Employers' Insurance Company. *See* Md. Code (1991, 2008 Repl. Vol., 2014 Supp.) LE § 10-102(c). As of October 1, 2013, it may not issue any new policies, although it remains liable on policies issued prior to that date. *See* LE §§ 10-101(e) & 10-102(b).

[2]The Commission reserved on the issue of whether a third individual, Xang Gang Cui, was Yao's co-employer or statutory employer because Cui failed to appear at the hearing. Cui also was uninsured. This issue has never been decided by the Commission.

[3]This amounts to $28,356 in weekly TTD benefits.

employee whose employer is uninsured and defaults on an obligation to pay. The Fund requested a rehearing on the issue whether Zhu also was Yao's employer at the time of the accident. Three days later, the request for rehearing was denied. On June 10, 2009, in the Circuit Court for Worcester County, the Fund filed a petition for judicial review of the May 2009 Award, and prayed a jury trial.

Meanwhile, on June 4, 2009, Yao made a written demand on Chen for payment of the May 2009 Award. Chen failed to respond or make payment. Thereafter, by letter dated July 7, 2009, Yao applied to the Fund for payment of the award. The Fund did not respond or pay the award.

On September 28, 2010, the Fund's judicial review challenge to the May 2009 Award was tried to a jury on the sole issue of whether Zhu (as well as Chen) was Yao's employer. The jury found that Zhu *and* Chen were Yao's employers at the time of the accident. Based on that finding, on October 18, 2010, the circuit court entered an order overturning the May 2009 Award and remanding the matter to the Commission to enter an amended compensation award.

On January 5, 2011, the Commission issued a new award ("January 2011 Award"). In the January 2011 Award, it modified the May 2009 Award to delete the language stating that Zhu was not Yao's employer; to add language stating that Zhu was Yao's employer and that Zhu was insured by IWIF; to state that Chen, Zhu, and IWIF should "jointly and severally, pay" the award of compensation; and to otherwise "affirm[]" the May 2009 Award.

3

In the meantime, Yao filed a request for additional TTD benefits. On November 8, 2011, the Commission held a hearing on that request.[4] The next day, it issued an award of compensation for TTD benefits for the period from October 14, 2006 though October 26, 2011, at a rate of $417 per week ("November 2011 Award").[5] The caption of the order named IWIF and the Fund as "CO INSURER[s]." In the body of the order, the Commission found that the "[Fund] and [IWIF] [were] jointly and severally liable for payment of all [TTD benefits] awarded." It directed Zhu and Chen and the "above-named insurers" to "jointly and severally pay" the award.

On November 17, 2011, the Fund requested a rehearing. It asserted that the November 2011 Award erroneously named it as Chen's "insurer" and erroneously found it to be jointly and severally liable with IWIF for the award, when, by law, only Chen could be jointly and severally liable with Zhu for the award.

A rehearing was held on September 20, 2012. By then, IWIF had paid Yao the entire benefits awarded, totaling more than $147,000.[6] At the hearing, counsel for the Fund and IWIF seemed to be in agreement that the Commission lacked authority to order the Fund to reimburse IWIF for half the benefits IWIF had paid. Counsel for IWIF suggested that the

_____

[4]The hearing also purported to address the issue of whether Chen and Zhu were co-employers, but, as discussed, that issue already had been decided in the circuit court.

[5]This amounts to $108,420 in TTD benefits.

[6]The subrogation department of IWIF had, in turn, made a demand upon the Fund to reimburse it for half of that amount. The Fund refused to pay.

4

Commission could order that IWIF be credited in that amount; find that Yao had made a legally sufficient demand upon the Fund in 2009, triggering the Fund's liability; and order the Fund to pay Yao one-half of the benefits, *i.e.*, the amount credited to IWIF.

Counsel for Yao disagreed with this suggestion, arguing that, because the employers -- Chen and Zhu -- were jointly and severally liable, it did not make any difference who paid, so long as one of them did. As Yao already had been paid in full by IWIF, Zhu's insurer, any "credit" necessarily would mean that Yao would be obligated to return part of his award to IWIF. Yao's attorney took the position that that was not allowed by law. The Fund agreed that a credit to IWIF was not permissible and argued that it had no liability to Yao or to IWIF because any obligation it may once have had to pay Yao was extinguished when Zhu, who had insurance, was found to be an employer of Yao.

On October 1, 2012, the Commission issued a new order affirming and clarifying its November 2011 Award ("October 2012 Order"). That order states in relevant part:

> The Commission finds that Commissioner Adams [previously] found that Mr. Chen and Mr. Zhu were co-employers of [Yao] and Ordered temporary total disability benefits to be paid. [Yao] made a legally sufficient application of Mr. Chen to pay the benefits Ordered under [the May 2009 Award] and [January 2011 Award].[7] When Mr. Chen failed to pay pursuant to [those] Orders, the [Fund] became liable. Therefore, the [Commission] does have the authority to Order the [Fund] to reimburse the [IWIF] for one-half of the benefits paid to [Yao].

---

[7] As we shall discuss, *infra*, there was no evidence before the Commission that Yao made a demand on Chen following the issuance of the January 2011 Award.

5

The Fund and Yao each filed petitions for judicial review of that order in the Circuit Court for Baltimore County.[8]  The cases were consolidated and the Fund and IWIF each moved for summary judgment.[9]  The circuit court held a hearing and, on August 13, 2013, granted summary judgment in favor of the Fund, overturning the Commission's October 2012 Order and overturning, in part, its November 2011 Award.  This timely appeal followed.

## DISCUSSION

IWIF contends the Commission correctly found that the Fund's liability for payment of the TTD benefits was triggered in 2009 when Yao made demand upon it after Chen defaulted on his obligation to pay the May 2009 Award; that the Fund's payment obligation was not stayed by its 2009 petition for judicial review; and therefore IWIF has a right to reimbursement for the amount of the May 2009 Award that it subsequently paid to Yao following the January 2011 Award establishing that Zhu and Chen were jointly and severally liable for payment of that award.

The Fund responds that the statutory scheme is clear and requires that it pay only when there is no other responsible party -- *i.e.*, an employer or insurer -- available to pay.

---

[8]A petition for judicial review may be filed in the circuit court for the county where the covered employee resides, where the employer has his or her principal place of business, or where the accidental injury occurred. LE § 9-738(b). Although not clear from the record, it appears that Chen may now work in Baltimore County, making venue proper.

[9]Yao responded to the Fund's motion and clarified the factual and procedural background, but took no position on the merits of the Fund's legal argument.

6

Because IWIF is a responsible party and already has paid all of the TTD benefits awarded, "there is no role for the [Fund] to play." The Fund argues, moreover, that it is protected from a claim for contribution by the doctrine of sovereign immunity.

Our standard of review is well settled:

The Commission is an adjudicatory administrative agency. *See W.M. Schlosser Co. v. Uninsured Employers' Fund*, 414 Md. 195, 204, 994 A.2d 956, 961 (2010). Thus, in our review we look through the decision[] of the circuit court[] . . . , and evaluate the agency decision directly. *See Frey v. Comptroller of the Treasury*, 422 Md. 111, 136–37, 29 A.3d 475, 489–90 (2011). As we explained in *Board of Physician Quality Assurance v. Banks*, "[a] court's role in reviewing an administrative agency adjudicatory decision is narrow[;] it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999) (quoting *United Parcel Service, Inc. v. People's Counsel of Baltimore Cnty*., 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994)). Additionally, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Banks*, 354 Md. at 69, 729 A.2d at 381 (citations omitted).

*W.R. Grace & Co. v. Swedo*, 439 Md. 441, 452-53 (2014).

The Fund is a "source of last resort in Maryland to provide workers' compensation benefits to a claimant and protect that claimant from an uninsured employer who refuses to pay a workers' compensation award." *Uninsured Employers' Fund v. Danner*, 388 Md. 649, 659-60 (2005). *See also W.M. Schlosser Co.*, 414 Md. at 211 (2010) (the Fund's purpose is "benevolent and remedial, that being 'to protect injured workers whose employers failed, either willfully or negligently, to carry workers' compensation insurance for them.'") (citation omitted). The Fund receives most of its money from assessments on employers and

7

insurers and from interest and investment income derived therefrom. *See* LE §§ 9-1005 - 9-1009 (assessments); § 10-314 (interest and investment income).

The Fund's "obligation to pay workers arises not from an award of compensation by the Commission, but from [LE] § 9-1002." *Danner*, 388 Md. at 661. That statute establishes the prerequisites for "[a]n award . . . payable out of the Fund." LE § 9-1002(a). Two are relevant here. First, an employer must be in default on payment of a Commission award. LE § 9-1002(b). Default occurs when an uninsured employer fails to pay an award within 30 days after the award is made. *Id*. However, if "an application for [judicial] review has been timely filed under subsection (g) of this section or a [petition for judicial review] timely served," an employer is not in "default" within the meaning of section 9-1002. *Id*. After a default occurs, the Commission is supposed to give notice to the employer that the employer's license or permit to do business in Maryland may be suspended if the award is not paid. LE § 9-1002(c).[10] An employer in default has 30 days thereafter to pay or to notify the Commission of the reasons the employer objects to the award. LE § 9-1002(d).

Second, the employee or his dependents must apply to the Fund for payment. LE § 9-1002(e). Once the Fund receives an application for payment, it may "pay the award" or "apply for review under [LE section 9-1002(g)]." LE § 9-1002(f). Pursuant to subsection

_____

[10]It is unclear whether such notice ever was given in the case at bar. In any event, the Fund does not argue that Yao's application for payment was improper for this reason. Moreover, as the *Danner* Court explained, the lack of notice to an insured employer ordinarily would not prejudice the Fund. 388 Md. at 664 n.15.

(g), the Fund may "rais[e] issues," request discovery, and request a hearing before the Commission before paying an award.

If the Fund pays an award to a covered employee, it is subrogated to the employee's rights against the uninsured employer and to the rights of the uninsured employer against a third party. LE §§ 9-1003(a) & 9-1004. Also, it may bring a civil action against the uninsured employer, refer the matter for criminal prosecution, or both. LE § 9-1003(b).

In *Danner*, the Court discussed the role of the Fund and interpreted LE section 9-1002 in addressing the question whether a default can occur while the Fund is litigating an issue collateral to the award itself. There, the injured worker (Danner) made a claim for compensation with the Commission. The Commission held a hearing at which the Fund was present. The Commission found that one Timothy Stivers was Danner's employer and that Stivers was uninsured, and awarded Danner compensation. At the Fund's request, the Commission reserved on the issue whether Danner also had a statutory employer.[11] Neither

---

[11] A statutory employer is anyone other than the direct employer of the covered employee who nevertheless may be liable for an award of compensation, pursuant to LE § 9-508. A principal contractor who is not the direct employer of the covered employee may be liable if the principal contractor contracted to perform work; contracted with a subcontractor for performance of all or a portion of that work; and the covered employee was injured during the performance of that work while directly employed by a subcontractor. LE § 9-508(a). Under those circumstances, the covered employee may collect a compensation award either from the subcontractor or from the principal contractor. LE § 9-508(e). If the covered employee names the statutory employer in his or her claim, the statutory employer may join the direct employer and has a right of indemnification against the direct employer. LE § 9-508(d)

9

Stivers nor the Fund filed an action for judicial review. Stivers defaulted and Danner made an application for payment with the Fund. The Fund refused to pay.

Thereafter, the Commission held a hearing on the deferred issue of the existence of a statutory employer and found that there was no statutory employer. The Fund petitioned for judicial review from that decision.

Danner then filed a petition with the Commission seeking relief from the Fund's failure to pay. The Commission ordered the Fund to pay the award, a 40% penalty on all monies due and unpaid as of that date, and $500 in attorneys' fees. The Fund petitioned for judicial review of that order, arguing that there could be no default until the issue of the existence of a statutory employer finally was resolved and, in any event, the Commission had no authority to order it to pay a penalty or attorneys' fees. The circuit court affirmed. On appeal to this Court, we affirmed the Commission's ruling that the Fund's obligation to pay was not deferred pending resolution of the statutory employer issue, but reversed the Commission's assessment of a penalty and award of attorneys' fees. *Uninsured Employers' Fund v. Danner*, 158 Md. App. 502 (2004).

The Court of Appeals granted a writ of *certiorari*. It held that the Fund's obligation to pay was triggered when Stivers defaulted and Danner applied to the Fund for payment. The Court opined that the administrative resolution of the issue whether a statutory employer existed did not operate to stay the Fund's obligation to pay. It reasoned that, although the

Fund "ultimately" might be relieved of its obligation to pay by a finding in its favor on that issue,

> the potentiality for [another entity] to be found to be Danner's statutory employer should not provide the basis for the Fund to avoid, delay, or defer its obligation to pay because the Fund is entitled to full subrogation rights should it pay benefits to a claimant and later gain the right to recover the payment of those benefits from a statutory employer.

388 Md. at 665 (footnote omitted).

The Court in *Danner* emphasized that the Fund is better able to "bear the cost of deferred adjudication of collateral issues than the injured worker who has been found to be entitled to relief." *Id*. at 666. It found that the legislative history of LE section 9-1002 supported its conclusion that "the pendency of a reserved issue collateral to the award of compensation" does not defer the Fund's obligation to pay and that "only the raising of issues directly related to the validity of the Commission order establishing the award of compensation" would have that effect. *Id*. at 667. In a footnote, the Court opined that even if the Fund had timely petitioned for judicial review of the award of compensation, that likely would not have deferred its obligation to pay, because staying an award of weekly compensation benefits during the pendency of an action for judicial review would "'seriously hamper[]'" the "'humanitarian policy'" underlying the Workers' Compensation Act, which is to provide "speedy relief" to injured workers. *Id*. at 668 n.17 (quoting *Gleneagles. Inc. v. Hanks*, 385 Md. 492, 500 (2005)).

11

On the issue of the penalty imposed upon the Fund, however, the Court held that the Commission erred because the statutory authority for penalties for late payment -- LE section 9-728(b) -- only permits the Commission to sanction an "employer or its insurer." The Fund is neither and therefore cannot be penalized. *See also Danner*, 158 Md. App. at 515 (Because the Fund is a creature of statute, the fact "[t]hat the Fund failed to do what it should have done does not, *ipso facto* confer on the Commission the authority to impose penalties on the Fund" absent statutory authority for the same.).

Finally, the Court held that the award of attorneys' fees against the Fund was permissible. It reasoned that the Commission has broad statutory authority to award fees if it finds that a party to a proceeding has acted "unreasonably" in bringing or opposing it. 388 Md. at 671. Given that the Fund was a party and the Commission found that it had been unreasonable in its refusal to pay the award of compensation, the Court concluded that the Commission had not erred or abused its discretion in awarding fees.

We return to the case at bar. After the Commission issued the May 2009 Award, Chen defaulted and Yao applied to the Fund for payment. The Commission found that this was a legally sufficient demand for payment. We perceive no error in that finding. *Danner* makes plain that the Fund's petition for judicial review of the May 2009 Award did not operate to stay its obligation to pay, because it was raising a collateral issue -- whether Zhu also was Yao's employer -- and was not challenging the amount of the compensation

12

awarded or the underlying basis for the award. Thus, as of July 7, 2009, the Fund's obligation to pay was triggered.

If, at that time, Yao had sought relief from the Commission arising from the Fund's failure to pay, as Danner did, the Commission would have been within its power to order the Fund to pay the May 2009 Award and to pay the cost of the proceeding and attorneys' fees. That did not happen, however. Instead, after the circuit court resolved the Fund's petition for judicial review in the Fund's favor and "overturned" the May 2009 Award, the Commission, on remand, entered the January 2011 Award. That award amended the May 2009 Award to find that Yao had two employers -- Zhu and Chen -- and that they were jointly and severally liable for the award. The finding of joint and several liability meant that each employer was liable for the entire award and that Yao could collect the full amount of the award against either one. Yao collected against Zhu, through IWIF. Not surprisingly, Yao did not apply to the Fund for payment of the January 2011 Award.

Likewise, in the November 2011 Award, the Commission found that Yao was temporarily totally disabled (for the five-year period between October 2006 and October 2011) and Zhu and Chen, as his employers, were jointly and severally liable for that award. Yao collected the entire award against Zhu, through IWIF, and, again not surprisingly, did not apply to the Fund for payment.[12]

---

[12]In oral argument, IWIF agreed, quite reasonably, that there was no triggering event relative to the November 2011 Award. The award was paid and Yao did not apply to the
(continued...)

IWIF nevertheless takes the position that once the Fund's obligation to pay was triggered by Yao's application in July of 2009, the Fund stepped into the shoes of the defaulting employer, *i.e.*, Chen. Thus, its obligation to pay was not altered by the later overturning of the May 2009 Award and the entry of the January 2011 Award. IWIF maintains that this interpretation is consistent with the overarching purpose of the Act. We disagree.

Once Yao recovered the award against Zhu, through IWIF, the Fund had no further role to play. Under LE section 9-1002, a predicate to the Fund's obligation to pay an award is that there not be another source of compensation. This is so because the injured employee (or his or her dependents) must apply to the Fund for payment before the Fund may be called upon to pay. The injured employee only would need to apply if he or she is unable to be compensated from another source, whether that be directly from the uninsured employer or from the insurer of another direct employer or a statutory employer.

In this case, had the Commission initially found that Chen and Zhu both were Yao's employers, and had it therefore issued an award of compensation against both of them, the Fund never would have been obligated to make any payment. Yao could have and would have collected against Zhu, the insured employer, not against Chen, the uninsured employer.

---

[12](...continued)
Fund for payment.

14

We agree with the Fund that the fact that this determination was made belatedly is a "procedural wrinkle" that does not alter the result in this appeal.

LE section 9-1002 gives an "employee or his dependents" the right to make an application for payment by the Fund. It does not contemplate a claim for contribution against the Fund by a co-employer or its insurer. The Fund's role is not that of a co-insurer or co-employer. *Danner*, 388 Md. at 668-69. It is a back-up source of compensation for an injured worker whose employer fails to secure insurance. A finding that an injured worker has an insured employer -- whether a co-employer or a statutory employer -- eliminates the need for the Fund to act as a back-up source of compensation. *Id.* at 665 & n.16 (explaining that, if the Fund pays benefits and, at a subsequent point in time, a statutory employer is found to exist, the Fund would be entitled to pursue a claim to recover the benefits paid from the statutory employer). Because the statute only requires the Fund to pay an award to an employee or his or her dependents, it does not require the Fund to reimburse an insurer for an award the insurer's insured was jointly and severally liable to pay. The Commission exceeded its authority when it ordered the Fund to reimburse IWIF for money paid to Yao.

Finally, we address IWIF's argument that, if we conclude that the Commission exceeded its authority in ordering reimbursement, we should remand the matter to the Commission for it to "pass an amended Order that the [Fund] pay [Yao] directly what [it] owed." Thereafter, IWIF and Yao can "resolve any potential credits so that [Yao] is not unjustly awarded double benefits." For the reasons already explained, the Fund's obligation

15

to pay the May 2009 Award, although enforceable prior to the circuit court reversal of the Commission's finding that there was but one employer, became unenforceable when that award was overturned and replaced by the January 2011 Award. That award granted Yao benefits for which his two employers, Zhu and Chen, were jointly and severally liable. Zhu was insured and, consistent with joint and several liability, Yao obtained full payment of the award from IWIF, as Zhu's insurer. Yao did not subsequently apply for payment from the Fund, nor was there any reason to do so. The Fund did not have any obligation to pay the award, as there was no failure of insurance that left Yao without the compensation he was awarded.[13]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

---

[13]Because we conclude that the Fund is not obligated to make payment, we need not address its argument that it is protected against an action for contribution by the doctrine of sovereign immunity.