661 A.2d 737

Joan A. PARA et al.

v.

The RICHARDS GROUP OF WASHINGTON
LIMITED PARTNERSHIP et al.

No. 131, Sept. Term, 1994.

Court of Appeals of Maryland.

July 20, 1995.

242

George S. Tolley, III (Gilbert H. Robinette, Bruce J. Babij, Robinette, Dugan & Jakubowski, P.A., on brief), Baltimore, for appellants.

John T. Bergin (Kevin J. McCarthy, McCarthy, Bacon & Costello, on brief), Lanham, for appellees.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

In the instant case, we must determine whether the owner and developer of a housing development who serves as the general contractor can be considered a statutory employer under the Maryland Workers' Compensation Act and whether, because of the statutory employer status, can be immune from tort liability in a suit arising out of the death of a subcontractor's employee. We hold that in the instant case, the own-

er/developer is a statutory employer and is therefore immune from tort liability.

## I.

On December 21, 1989, The Richards Group of Washington, Limited Partnership ("Richards"), an owner and developer of new home sites, signed a contract with Razzano & Fohner, Inc. ("Razzano & Fohner") to do plumbing work on the houses under construction in section five of a new home development called Crofton Village, located in Anne Arundel County. The property on which the work was to be done was owned by Richards. Under the terms of this contract, Richards was known as the "contractor" on the Crofton Village project and Razzano & Fohner was designated as the "subcontractor." Additionally, the contract required that while working on the project, Razzano & Fohner maintain workers' compensation insurance covering its employees and that Richards be listed as a named insured on Razzano & Fohner's insurance policy.

On February 2, 1991, prior to the accident giving rise to this cause of action, Richards entered into a contract for the sale of lot 37, section 5 of Crofton Village subdivision with Joseph and Lily Chang ("the Chang Contract"). This contract was later voided, subsequent to the accident in question, when Richards learned that the Changs intended to use the property for investment purposes. After the accident, on August 23, 1991, Richards entered into a contract of sale for lot 37, section 5 with Thomas Harrington and Rebecca Ebeling.

On March 19, 1991, Brian Para, an employee of Razzano & Fohner, who was performing excavation and trenching work on lot 37, section 5 in connection with Razzano & Fohner's contract with Richards, was killed when the trench in which he was working collapsed. Joan Para, as executrix of her son's estate and individually with her husband, Carl Para, brought suit against Richards, Enterprise Washington Corporation, and Anne Arundel County in the Circuit Court for Anne

Arundel County.[1] The complaint alleged counts for negligence and wrongful death against each of the parties. The complaint identified Richards as being in the "business of promoting and supplying general and specialized contracting services in the construction of condominiums, townhouses and residential homesites" and as the "general contractor[ ] in the construction and erection of residential homesites in . . . 'Crofton Village.' " In response to the complaint, Richards filed a motion for summary judgment contending that it was entitled to judgment as a matter of law because, under the then existing codification of the statutory employer provision of the Maryland Workers' Compensation Act, Maryland Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Article 101, § 62,[2] Richards was Para's statutory employer and was therefore immune from liability in a personal injury action. We note that Article 101, § 62 was transferred, with revisions, effective October 1, 1991 to Md.Code (1991), Labor and Employment Art., § 9–508.[3] *See* Chapter 8 of the Acts of 1991. The Revisor's Note to § 9–508 states that "[t]his section is new language derived without substantive change from former Art. 101, § 62." Thus, because the transfer of the statutory employer provision did not effect a substantive change, we will refer to § 9–508 in the course of this opinion. Art. 101, § 62 provided in pertinent part:

---

1. Enterprise Washington Corporation was the general partner of the Richards Group. Following the grant of summary judgment as to Richards, summary judgment was granted in favor of Enterprise on June 17, 1994. The Paras argued in their complaint that Anne Arundel County was negligent in that the agents of the county who inspected the site "knew or through the exercise of reasonable care should have known, that the soil of the premises known as Crofton Village was sandy and exceedingly unstable, thereby rendering any trenching or excavation work performed on it inherently dangerous and hazardous." Anne Arundel County's liability is not before this Court on the present appeal.

2. Unless otherwise specified, all references to Article 101, § 1 *et seq.* are to Maryland Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.).

3. Unless otherwise specified, all references to § 9–508 are to Md.Code (1991), Labor and Employment Art.

"(a) When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer...."

Our current statutory employer provision codified at § 9-508 provides:

**"Liability of principal contractor for compensation.**

(a) *In general.*—A principal contractor is liable to pay to a covered employee or the dependents of the covered employee any compensation that the principal contractor would have been liable to pay had the covered employee been employed directly by the principal contractor if:

(1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;

(2) the principal contractor contracts with a subcontractor for the execution by· or under the subcontractor of all or part of the work undertaken by the principal contractor; and

(3) the covered employee is employed in the execution of that work."

Richards argued that it was a general contractor on the Crofton Village project and that Razzano & Fohner had entered into an agreement with Richards as subcontractors on the project. Richards therefore argued that it was Para's statutory employer and that Para's exclusive remedy was through the Workers' Compensation Act. Appellants, the

Paras, responded to the motion for summary judgment by arguing that Richards could not be Para's statutory employer because, at the time of the accident, Richards was the owner of the lot on which Para was injured and the owner of property could not be a statutory employer without *first* entering into a contract with a third party to perform work and then delegating part of that work under a subcontract. Richards later filed a Supplemental Memorandum in Support of Motion for Summary Judgment in which it introduced the Chang contract to refute the Paras' assertions that Richards was the owner of the property at the time of the accident. The Paras then filed a response, arguing that under workers' compensation law, a statutory employer is established only if there is an existing principal or antecedent contract with a third party at the time the subcontract is entered into. Thus, the Paras argued, because the Chang contract was not in existence at the time of the formation of the subcontract between Richards and Razzano & Fohner, Richards could not be considered Para's statutory employer.

A hearing on Richards's motion for summary judgment was held before Judge Robert H. Heller, Jr.[4] Judge Heller issued a Memorandum Opinion and Order granting Richards's motion for summary judgment. Judge Heller recognized the existence of the Chang contract, but noted that "the existence of the Chang contract is not dispositive of the Court's decision to grant the motion [for summary judgment]." Instead, the court found that:

> "The Court agrees with Plaintiffs that there was no 'antecedent undertaking, or principal contract' to build the townhouse for a third party, prior to the December 21, 1989 'Subcontractor's Contract' between Richards Group and R & F.... Although Richards Group had not contracted to

---

4. We note that the hearing on Richards's motion for summary judgment was held before the filing of Richards's supplemental memorandum noting the existence of the Chang contract. Nonetheless, the judge's Memorandum Opinion and Order following the hearing was issued subsequent to the filing of Richards's supplemental memorandum.

build the townhomes prior to December 21, 1989, it was known and understood by all the parties that the townhomes to be developed in Crofton Village were eventually to be sold to the public. The Court notes that in developing residential communities it is common practice for the owner-developer to execute 'subcontracts' prior to selling the property to third parties. The owner-developer, for example, will typically contract for the construction of roads, foundations, roofing, plumbing, and electrical work, prior to sale to the public."

The court further recognized the unfairness that would result if it accepted the Paras' argument that the contract with the Changs needed to precede the contract between Richards and Razzano & Fohner. The court noted:

"Plaintiffs admit that if, for example, Brian Para had died while working on Lot 36, which was pre-sold to a third party prior to December 21, 1989, then Richards Group would be a 'statutory employer.' This hypothetical demonstrates the inconsistencies and unfairness that may arise—Employee X, injured on a pre-sold lot may be compensated by his 'statutory employer' under the Act, while Employee Y, injured on an unsold lot, may be left without a remedy under the Act because no statutory employer-employee relationship is deemed to have existed. Such inconsistency and unfairness is not in accord with the purpose of section 62, and contrary to the intent of the statute."

The court therefore found that "[i]n this situation, the issue of whether a statutory employer-employee relationship exists, should not turn on the date each lot was sold to the public" and therefore granted the motion for summary judgment, finding that Richards was Para's statutory employer. The Paras filed a Motion for Reconsideration of Grant of Summary Judgment or, in the Alternative, for Entry of Final Judgment. On August 2, 1994, Judge Heller granted the Paras' request for certification of final judgment. The Paras subsequently filed a notice of appeal to the Court of Special Appeals. Prior to a determination by the Court of Special Appeals, we granted certiorari on the Paras' appeal to determine the

important issues raised in the instant case. We agree with the trial judge's analysis of the instant case.

## II.

■ In deciding the issues in the present case, we look both to our application of the statutory employer provision of our workers' compensation law in prior opinions and the purpose behind the provision. In *Honaker v. W.C. & A.N. Miller Dev. Co.*, 278 Md. 453, 365 A.2d 287 (1976) (*"Honaker I"*), this Court considered the requirements which must be met under former Art. 101, § 62 to establish statutory employer status. In *Honaker I*, we were asked to review the grant of summary judgment to a development company, building a single house on property it owned, in a tort suit brought by the employee of a contractor who was injured while installing the roof on the house. Looking to the language of Art. 101, § 62, we established that to invoke the provisions of Art. 101, § 62 required:

"(1) a principal contractor

(2) who has contracted to perform work

(3) which is a part of his trade, business or occupation; and

(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work."

*Honaker I*, 278 Md. at 460, 365 A.2d at 291. We therefore observed that the statute:

"clearly requires two contracts, one between the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for the third party, and another between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor."

*Id.* We noted that "subcontract" is defined as " '[a] contract with a person who owes labor or services under another contract, to perform some or all of the services or labor due.' " *Honaker I*, 278 Md. at 460, 365 A.2d at 292 (quoting *Radin's Law Dictionary* ) (emphasis omitted). In this light, we found

that in order for statutory employer status to exist, "there must be an original contract and a subsequent contract." *Honaker I,* 278 Md. at 461, 365 A.2d at 292. We therefore held that the owner/developer could not be considered a statutory employer and therefore immune from tort suit because there was no showing that a contract existed under which Miller agreed to build the house. *Honaker I,* 278 Md. at 463, 365 A.2d at 293. Thus, we found that summary judgment was improper and remanded the case to the trial court. *Honaker I,* 278 Md. at 463–64, 365 A.2d at 293. Upon remand, the owner/developer established that he had a custom building contract for the house in question. The Court of Special Appeals therefore found on appeal from a judgment against the owner/developer that the owner/developer did in fact meet the requirements to establish himself as a statutory employer and was therefore immune from tort suit. *See W.C. & A.N. Miller Dev. Co. v. Honaker,* 40 Md.App. 185, 194, 388 A.2d 562, 568 (1978), *aff'd, Honaker v. W.C. & A.N. Miller Dev. Co.,* 285 Md. 216, 401 A.2d 1013 (1979) (*"Honaker II "*).

In our more recent opinions, we have reaffirmed the requirement for a principal contract, which we also have styled as an "antecedent undertaking." *See Lathroum v. Potomac Elec. Power Co.,* 309 Md. 445, 524 A.2d 1228 (1987); *Brady v. Ralph Parsons Co.,* 308 Md. 486, 520 A.2d 717 (1987). In *Lathroum,* we held that the Potomac Electric Power Company ("PEPCO") could not be the statutory employer of an injured worker of a company hired by PEPCO to provide labor and services for several of PEPCO's power facilities. 309 Md. at 455, 524 A.2d at 1232. We found that PEPCO's statutory duty as a public utility to provide services to the public did not qualify it as a statutory employer with an antecedent undertaking. 309 Md. at 450–51, 524 A.2d at 1231. Similarly, in *Brady* we again noted that former § 62 required two contracts. We stated:

> "The first contract is between 'the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for a third party.' This has been referred to as an 'antecedent undertaking' or

'principal contract.' The second contract is between the 'principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work' that the principal contractor agreed to perform for the third party. The work covered by the second contract (i.e., subcontract) must be work which is a part of the principal contractor's trade, business or occupation." (Citations omitted).

*Brady*, 308 Md. at 504, 520 A.2d at 727. We there stated that the requirement of two contracts meant that property owners could not be principal contractors and thus statutory employers "except in those situations where the owner also serves as a contractor for yet another entity." *Brady*, 308 Md. at 504 n. 20, 520 A.2d at 727 n. 20.

 In applying the reasoning of these prior opinions to the instant case, we must also be mindful of the purpose behind the Workers' Compensation Act and the enactment of the statutory employer provision. We have previously stated that the Workers' Compensation Act as a whole "should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Howard Co. Ass'n. Retard. Cit. v. Walls*, 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980); *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 467, 620 A.2d 340, 342 (1993). In *State v. Bennett Bldg. Co.*, 154 Md. 159, 140 A. 52 (1928), this Court set forth the rationale behind the statutory employer provision of the Workers' Compensation Act. The Court stated:

"It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak finan-

cially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the workman his contemplated compensation, the statute has imposed ... a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman."

*Bennett Bldg. Co.*, 154 Md. at 161-62, 140 A. at 53. *See also Palumbo v. Nello L. Teer Company*, 240 F.Supp. 226, 230 (D.Md.1965) ("[the statutory employer provision] had the purpose of obviating the sometimes difficult and troublesome construction of who was an employee's employer on a construction project where there were numerous subcontractors and subsubcontractors, and to obviate the use of subcontractors and subsubcontractors as a device for avoiding financially responsible workmen's compensation coverage"). Thus, the purpose of the statutory employer provision is the protection of the injured worker who might otherwise receive no compensation for work-related injuries if the worker's immediate employer had not obtained workers' compensation coverage and had little resources to pay damages in a personal injury action. *See Inner Harbor Warehouse, Inc. v. Myers*, 321 Md. 363, 375, 582 A.2d 1244, 1250 (1990) ("it is obvious that the General Assembly, in enacting [the statutory employer provision], intended principal contractors to bear the responsibility of workers' compensation coverage even if, indeed, especially if, its subcontractors had not procured their own workers' compensation insurance"); *Cogley v. Schnaper & Koren Constr.*, 14 Md.App. 322, 332, 286 A.2d 819, 824-25 (1972) ("We think the legislative purpose in enacting [the statutory

employer provision of the Workmen's Compensation Act] was to further the benevolent concept of Workmen's Compensation and to achieve that result by providing an incentive to the principal contractor to see that his subcontractors carry Workmen's Compensation insurance upon their employees."). The statute also serves to "prevent evasion of compensation coverage by the subcontracting of the employer's normal work." 1C Arthur Larson, *Workmen's Compensation Law* § 49.00, at 9–1 (2d ed. 1986). *See also Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 19, 155 A.2d 691, 696 (1959) (noting that the purpose of the statutory employer provision is to provide protection to workers "by forestalling evasion of the Act by any employers who might seek to avoid its obligations by subdividing their operations through subcontracts").[5] The statutory employer provision considers the principal contractor to be an employer of the subcontractors' workers and requires the principal contractor to carry workers' compensation for these employees. *See* Richard P. Gilbert and Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 3.3, at 40 (2d ed. 1993). In return for providing workers' compensation coverage, the principal contractor is

---

**5.** Gilbert and Humphreys also set forth the rationale behind the existence of Maryland's statutory employer statute:

"A dozen or more different employers might routinely have their work forces commingled while engaged in building a structure. Small or inexperienced subcontractors too often fail to obtain workers' compensation coverage or neglect to keep it in force. That occurrence causes an injured employee significant hardship because of the denial of speedy medical treatment and compensation benefits. It leaves the injured employee with little practical recourse except to bring suit against his employer (who usually has little, if any, fiscal responsibility), other subcontractors, or the principal contractor. Aside from the claimant's personal suffering, the principal contractor is exposed to repeated litigation inasmuch as he is most often perceived as having the deepest pockets. Conversely, unscrupulous contractors might seek to avoid the Act by requiring every worker to sign a subcontracting agreement. Injured workers would find themselves without a remedy under the Act since they would be considered to be uninsured subcontractors, and 'employees' of no one." (Footnote omitted).

Richard P. Gilbert and Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 3.3, at 39–40 (2d ed. 1993).

immune from civil liability for injuries suffered by covered employees. *See* Art. 101, § 15; Md.Code (1991), Labor and Employment, Art. § 9–509.

Having reviewed the purpose behind the statutory employer provision and our interpretation of that statute in light of the facts of previous cases, we now turn to a consideration of the application of this statute to the facts of the instant case.

### III.

We initially note that despite the reference in our previous opinions to the principal contract as "antecedent" to the formation of a subcontract, our previous cases have never clearly presented the issue of whether the principal contract must precede a contract with a subcontractor or whether "antecedent" merely requires that a principal contract exist prior to the time of injury. The factual circumstances of the previous cases have required us only to consider the requirement that there must be a principal contract *and* a subcontract to perform work under the principal contract in order for the principal contractor to be considered a statutory employer. Our discussions focused primarily on whether or not a principal contract existed at all and whether the injured employee was performing work which was part of the principal contractor's trade, business or occupation such that the principal contractor and the subcontractor were working together "toward the execution of the whole of a particular work which the principal contractor had promised to perform." *Bennett Bldg. Co.*, 154 Md. at 166, 140 A. at 55. *See also Brady*, 308 Md. at 505, 520 A.2d at 727; *M.A. Long Company v. State Accident Fund*, 156 Md. 639, 646, 144 A. 775, 778 (1929). We have never before been asked to consider whether the principal contract must precede the subcontract where the principal contractor and the subcontractor both clearly anticipate the formation of principal contracts between the principal contractor and third parties. Although the Paras argue that our use of the term "antecedent" in our prior opinions requires that the principal contract be "antecedent" to the signing of the subcontract, "antecedent" may also properly be interpreted to

mean that the principal contract must be "antecedent" to the injury giving rise to the cause of action. The language of former § 62 did not itself require that the principal contract be antecedent to the contract with the subcontractor, nor does it state that the owner of property cannot be a statutory employer. *See* Art. 101, § 62. Rather, the statute required that the principal contractor undertake "to execute any work which is a part of his trade, business or occupation which he has contracted to perform." Art. 101, § 62. Further, § 9–508, our current statutory employer provision, eliminated the language "which he has contracted to perform" while noting that such change was not to be considered a substantive change from former Art. 101, § 62. This suggests that there was never an intention on the part of the legislature to prohibit statutory employer status to a contractor who is engaged in work which is part of his business, occupation or trade and contracts with another as subcontractor to carry out part of the work which the contractor has undertaken where both parties anticipate that principal contracts with third parties will be formed while the work is progressing. We believe that the language of the statute clearly anticipates circumstances such as that in the instant case in which an owner/developer in the business of the development of residential communities and the building of homes for sale to the public enters into "subcontracts" with subcontractors and both parties anticipate contracts for the sale of the houses before or during the time the subcontractors are to perform the work.

In the instant case, we agree with the trial judge that, at the time of Para's death, Richards was a principal contractor who had contracted to perform work which was a part of its trade, business or occupation, and who had contracted with Razzano & Fohner for the execution of a portion of the work undertaken by Richards. Although in our previous opinions we have indicated that in order to be considered a statutory employer, there must be an "antecedent" undertaking on the part of the principal contractor, we feel that interpreting that term to require the principal contract to be antecedent to the formation of a subcontract, rather than antecedent to the injury

would, under the facts of the instant case, controvert § 9–508's policy of protecting workers and preventing contractors from escaping the strictures of the Workers' Compensation Act by contracting out their work.

■ We hold in the instant case that where an owner/developer seeks to build homes for sale to the public and the owner/developer enters into a contract with a subcontractor to do construction work on a group of lots, where the parties clearly anticipate that before or during construction the houses are to be sold to third parties, then the owner/developer will be deemed to be a statutory employer of any employee of the subcontractor who is injured while working on the contract if, at the time of the injury, there were one or more contracts with third parties for the sale of any of the lots on which the subcontractor is working pursuant to the subcontract. It may not even be necessary that the principal contractor have a contract for sale for the specific lot on which the subcontractor's employee is injured if the subcontractor has undertaken to perform work on a group of lots that are to be sold to the public, and at the time of the injury, one or more contracts exist between the principal contractor and a third party. The primary basis for the statutory employer status is that the owner/developer is in the business of building and selling homes and it is understood by the parties that the homes being built are to be sold to the public before or during construction and one or more are sold prior to the injury. *Cf. Clendening v. London Assurance Co.,* 206 Tenn. 601, 336 S.W.2d 535, 538 (1960) (holding that builder who was in the business of building and selling homes and who had a contract for the building of a home in which employee of subcontractor was injured was to be considered a principal contractor for purposes of workers' compensation even though at the time of injury, he was the owner of the house being built). The subcontractor working on a development project covering several lots generally does not enter into a series of "mini contracts" for each lot on which the subcontractor's employees are to perform work. Rather, the subcontractor generally enters into one contract covering the work to be performed on

all of the lots. Thus, a contract for the sale of any of the lots may provide the necessary "two contracts" for the relationship encompassed by the subcontract to establish the existence of the general contractor as a statutory employer. To hold otherwise might leave some employees of subcontractors with the unfortunate situation of finding themselves unable to receive workers' compensation simply because they were not "lucky" enough to have been injured on one of the lots which had already been sold to a third party.

■ Applying § 9–508 to the facts of the instant case, it is clear that Richards undertook to perform work which was part of its business, occupation, or trade; that Richards further contracted with Razzano & Fohner to perform part of the work which Richards had undertaken; and that Para was killed while performing work under the contract between Richards and Razzano & Fohner. We see nothing in the language of § 9–508 which would be inconsistent with providing a general contractor statutory employer status as long as a principal contract exists at the time of the injury in question.

In the instant case, the trial judge noted that the parties to the contract between Richards and Razzano & Fohner understood that the lots in the residential community were to be developed for sale to the public. The contract between the parties identifies Richards as the "contractor" and Razzano & Fohner as the "subcontractor." Additionally, the contract between Richards and Razzano & Fohner required Razzano & Fohner to provide workers' compensation covering its employees and to name Richards as an "other insured" under its workers' compensation policy. The complaint filed by the Paras further indicates the understanding of the parties as to the nature of their relationship. The complaint identifies Richards not only as the owner, but also as "the general contractors in the construction and erection of residential homesites in ... 'Crofton Village.' " [6] Thus, the record clearly

---

6. We do not mean to imply that the term "general contractor" is synonymous with "principal contractor." *See Honaker v. W.C. & A.N.*

supports the trial judge's conclusion that the parties understood that the lots on which Razzano & Fohner were working were to be developed into homesites to be sold to the public.

 At the time of Para's accident, both a principal contract and a subcontract did in fact exist. Although there is no evidence of other sales contracts at the time of the accident, the record demonstrates that on February 2, 1991, prior to the accident giving rise to this cause of action, Richards entered into a contract with Joseph and Lily Chang for the sale of the lot on which Para was killed. Although this contract was later voided, it was in effect at the time of the accident in question. Merely because the contract was later voided does not void Richards's status as a statutory employer at the time of Para's death. Looking strictly to the language of the statute, it is clear that at the time of the accident out of which this cause of action arose, Richards was a principal contractor, having undertaken to perform work for a third party (the Changs) which was a part of its business, occupation, or trade, and having contracted with Razzano & Fohner to perform part of the work required under the Chang contract. We do not, however, suggest that Richards was a statutory employer of Razzano & Fohner's employees prior to the signing of the contract for the sale of any homes within the subdivision. We do not depart from our prior holdings that there must be two contracts—one by which the principal contractor becomes obligated to do work and one by which part of this work is delegated to a subcontractor. We merely hold that where an owner/developer in the business of constructing homes for resale to the public contracts with a subcontractor to do part of the development and construction work and it is understood by the parties that the homes are being built for sale to the public, we will not require a principal contract to be anteced-

---

*Miller Dev. Co.*, 278 Md. 453, 460 n. 4, 365 A.2d 287, 291 n. 4 (1976) (*Honaker I* ); *Kegley v. Vulcan Rail & Constr. Co.*, 203 Md. 476, 480, 101 A.2d 822, 823 (1954). We merely note the use of the term to denote the understanding of the parties in the instant case as to the nature of their relationship while working on the Crofton Village development.

ent to the contract formed with the subcontractor in order to fall within the purview of § 9–508.

We do not believe that the purpose of § 9–508 is well served by holding that a worker of a subcontractor injured on the job will receive workers' compensation only if the lot on which he or she is injured was sold prior to the signing of the subcontract. As the trial judge in the instant case noted, it is commonplace for the owner/developer of a tract of land to be developed as a residential community to contract for the completion of certain construction work such as plumbing, roofing, electrical work, or other preparatory work prior to the formation of contracts for the sale of any of the lots. We do not believe that § 9–508 intends to exclude the workers of such subcontractors from workers' compensation coverage where the anticipated principal contract on one or more of the lots covered by the subcontract occurs prior to the time of injury but subsequent to the signing of the subcontract.

Given our interpretation of the application of § 9–508 to the facts of the instant case, we hold that Richards was Para's statutory employer and that the Paras cannot maintain a cause of action sounding in tort against Richards. The lower court properly granted summary judgment in favor of Richards.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.*