882 A.2d 271

**UNINSURED EMPLOYERS' FUND**

v.

**Gerald E. DANNER.**

**No. 110, Sept. Term, 2004.**

Court of Appeals of Maryland.

Sept. 7, 2005.

---

650

652

James W. Himes, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, Towson) on brief, for Petitioner/Cross–Respondent.

Frederick William Miller (Susan S. Miller, Baltimore) on brief, for Respondent/Cross–Petitioner.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

Gerald E. Danner was injured in Baltimore City while performing carpentry services at the behest of his employer, Timothy Stivers ("Stivers"). Danner lost the use of his left hand and was unable to work. He filed for workers' compensation benefits with the Workers' Compensation Commission ("Commission").

On 14 June 2002 the Commission ordered Stivers to pay workers' compensation benefits to Danner. Stivers, who did not carry workers' compensation insurance, did not make the advanced payments. Accordingly, Danner requested payment from the Uninsured Employers' Fund ("the Fund"), initially in a letter dated 17 July 2002 and thereafter in letters dated 23 August 2002 and 25 September 2002. The Fund refused to pay Danner. Danner petitioned the Commission for relief and it ordered the Fund to pay, in addition to the earlier ordered benefits, a 40% penalty on all monies due Danner and a $500 attorney's fee.

The Fund sought judicial review in the Circuit Court for Baltimore County. The Circuit Court granted Danner's motion for summary judgment and denied the Fund's cross-motion for summary judgment.

The Fund appealed to the Court of Special Appeals. The intermediate appellate court, although holding that the Fund had an obligation to pay compensation to Danner pursuant to the Commission's 14 June 2002 order, reversed on the penalty and attorney's fee awards because it believed the Maryland Workers' Compensation Act did not permit the imposition of such sanctions against the Fund.

The Fund petitioned this Court to issue a writ of certiorari to consider the order to pay compensation to Danner. Danner petitioned us regarding the intermediate appellate court's reversal of the award of the penalty and attorney's fee. We

granted both petitions, 384 Md. 448, 863 A.2d 997 (2004), to consider the following questions, which we reword for clarity:

I. Whether the Commission erred by ordering the UEF to pay workers' compensation benefits when the Fund had no duty to pay the award while the issue of the possible statutory employer was awaiting resolution by the Commission and the ultimate rejection of that issue was before the Circuit Court in the judicial review action; [1]

II. Whether the Court of Special Appeals erred by reversing the judgment imposing penalties and attorney's fee for failure to pay workers' compensation benefits to Danner upon default in payment by an uninsured employer under the 14 June 2002 award?

We shall affirm the judgment of the Court of Special Appeals regarding the Fund's obligation to pay workers' compensation benefits and the penalty to Danner, but shall reverse with regard to the attorney's fee award.

I.

On 16 February 2001, Danner was working as a carpenter on the 2nd floor of the Wentworth Building on 300 Cathedral Street in Baltimore. His employer was Timothy Stivers, who had no workers' compensation insurance at the time. One of Danner's responsibilities while performing wood and trim work was to operate a band saw. He lacerated his left arm when his sweatshirt sleeve became ensnared in the saw blade, pulling his left arm into the blade. As a result, Danner lost substantial use of that arm and hand.

Danner filed with the Commission a timely claim for workers' compensation benefits. On 6 June 2002,[2] a Commission

---

1. The Fund does not question the legitimacy of the award or the amount of benefits, but rather maintains that it had no obligation to pay those benefits as ordered.

2. The Fund, from its brief, apparently believes that the hearing occurred on 11 June 2002. The Commission's order and Danner's brief, however, agree that the hearing occurred on 6 June 2002.

hearing on Danner's claim was attended by Danner and the Fund.[3] In a 14 June 2002 order, the Commission awarded compensation benefits to Danner, deciding, among other things, the following:

1. Danner sustained an accidental personal injury arising out of and in the course of employment on 16 February 2001;

2. Danner's disability resulted from that accidental personal injury;

3. Danner be paid temporary total disability at the rate of $400.00, payable weekly beginning 16 February 2001 and continuing as long as the claimant remains temporarily totally disabled;

4. the correct name of the employer to be Timothy Stivers;

5. Timothy Stivers was uninsured at the time of the accidental injury....

The Commission, at the request of the Fund,[4] deferred a decision on an issue raised by the Fund as to whether an entity identified as "NWJ" was Danner's statutory employer pursuant to § 9–508 of the Labor and Employment Article of the Maryland Code. (1991, 1999 Repl.Vol.).[5] Neither the Fund nor Stivers sought immediate judicial review of the Commission's 14 June 2002 Award of Compensation.[6]

---

3. The Fund was a party to the proceedings from the inception.

4. The record does not contain the transcript of the 6 June 2002 hearing. Danner stated in his brief and at oral argument before us that the Fund requested the Commission to reserve judgment on the pertinent issue.

5. Consistent with § 9–1201 of the Labor and Employment Article of the Maryland Code, we will refer to Title 9 of the 1999 Replacement Volume of the 1991 Labor and Employment Article as the Workers' Compensation Act. All citations to the Article in this opinion, unless otherwise stated, will be to the 1999 Replacement Volume, the relevant, and current, version at the time of the Fund's appeal.

6. Section 9–737 authorizes appeals to the Circuit Court from orders of the Commission through a petition for judicial review. This provision states, in relevant part:

An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commis-

Danner promptly sent Stivers a copy of the award and demanded payment. Nonetheless, Stivers did not pay the award. On 17 July 2002, Danner notified the Fund of Stivers's non-payment and requested payment from the Fund. The Fund refused.

On 13 September 2002 the Commission decided that NWJ was not Danner's statutory employer. On the same day, the Fund filed in the Circuit Court for Baltimore County for judicial review regarding the Commission's decision as to NWJ's status.[7] The Fund did not seek in that action review of the 14 June 2002 award of benefits to Danner.

Contemporaneous with the filing of the Fund's initial judicial review petition, Danner filed a complaint with the Commission that the order to pay him workers' compensation benefits remained unfulfilled. On 26 November 2002 the Commission held a hearing to determine whether Danner was entitled to sanctions against the Fund for its failure to pay the compensation benefits as ordered. On 11 December 2002, the Commission found as follows, in pertinent part:

> The Commission finds on the issue presented that the answer is "YES"; and finds that the Fund shall pay unto Frederick W. Miller, Esquire, counsel for [Danner], a counsel fee in the amount of $500.00; and shall pay unto the claimant a 40% penalty on all moneys due the claimant beginning February 16, 2001 and ending November 12, 2001.

The Fund sought judicial review on the record in the Circuit Court of the sanctions order. After oral argument, the court granted Danner's motion for summary judgment and denied

sion, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order. . . .

7. The parties resolved this nascent dispute by a 9 July 2004 stipulation that NWJ was the statutory employer, which stipulation was approved by the Commission on 22 July 2004. Thus, the Fund's initial action in the Circuit Court was not pursued.

the Fund's cross-motion for summary judgment. The Circuit Court directed the Fund to pay Danner the benefits that he was awarded on 14 June 2002 and left undisturbed the Commission's order for payment of the penalty and attorney's fee.

On 14 August 2003, the Fund appealed to the Court of Special Appeals. It alleged first that workers' compensation benefits were not owed by the Fund to Danner because the Fund's legal obligation to pay under the Workers' Compensation Act had not been triggered. Second, the Fund alleged that it could not be ordered, as a matter of law, to pay a penalty or an attorney's fee. As to the first contention, the intermediate appellate court answered that the pendency following the Commission's 14 June order of the question of whether NWJ was Danner's statutory employer did not operate to defer the Fund's legal obligation to pay the unappealed 14 June 2002 compensation award following Stivers's failure to pay. *Uninsured Employers' Fund v. Danner*, 158 Md.App. 502, 514, 857 A.2d 615, 622 (2004). To the second point, the Court of Special Appeals found that the penalty and attorney's fee were not authorized by law to be imposed against the Fund. *Id.* at 515, 518, 857 A.2d at 623, 624–25.

## II.

The issues framed by the parties in this case are solely legal ones. We must decide: (a) whether the Fund's obligation to pay a claimant when the employer is in default is suspended by operation of § 9–1002; (b) whether, as a matter of law, a penalty may be assessed against the Fund; and, (c) whether, as a matter of law, an attorney's fee may be assessed against the Fund. Because this case was decided in the Circuit Court by the grant of summary judgment where cross-motions were filed, our appellate review begins with the question of whether the Circuit Court, in reviewing the Commission's decision, properly determined that there was no genuine dispute as to a material fact. Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 17.7 at 348 (2d ed.1993). We then review the resultant questions of law de novo. Md. Rule 2–501(a); *John-*

*son v. Mayor of Balt. City,* 387 Md. 1, 5–6, 874 A.2d 439, 442 (2005) (holding that the standard of review in a workers' compensation claim disposed of at summary judgment by the Circuit Court is *de novo* ).

## A.

In interpreting a statute, the overarching objective is to ascertain the legislative intent. *Shah v. Howard County,* 337 Md. 248, 254, 653 A.2d 425, 427 (1995). The primary source from which to determine legislative intent is the plain meaning of the statutory language. *Pelican Nat. Bank v. Provident Bank of Maryland,* 381 Md. 327, 336, 849 A.2d 475, 480 (2004). "When the plain meaning is clear and unambiguous, and consistent with both the broad purposes of the legislation and the specific purpose of the provision being interpreted, our inquiry ordinarily is at an end." *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998). If, after considering the plain language in its ordinary and common sense meaning, two or more equally plausible interpretations arise, however, then the general purpose, legislative history, and language of the act as a whole is examined in an effort to clarify the ambiguity. *Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179, 183 (1995). We will "neither add nor delete words in order to give the statute a meaning...." *Harris v. Bd. of Educ. of Howard County,* 375 Md. 21, 31, 825 A.2d 365, 371 (2003) (citations omitted). Because this case involves the Workers' Compensation Act, we also endeavor to interpret its provisions liberally, where possible, in order to effectuate the broad remedial purpose of the statutory scheme. § 9–102; *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81, 84 (1996) (citing *Para v. Richards Group of Wash. Ltd. P'ship,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995)).

## B.

The Fund generally exists as a source of last resort in Maryland to provide workers' compensation benefits to a claimant and protect that claimant from an uninsured employ-

er who refuses to pay a workers' compensation award. Gilbert & Humphreys, Jr., *supra*, at § 2.2–4 at 24; *Workmen's Comp. Comm'n v. Property & Casualty Ins. Guar. Corp.*, 319 Md. 1, 3, 570 A.2d 323, 324 (1990); *Uninsured Employers' Fund v. Hoy*, 23 Md.App. 1, 5, 325 A.2d 446, 448–49 (1974); *Uninsured Employers' Fund v. Lutter*, 342 Md. 334, 361, 676 A.2d 51, 64 (1996) (Karwacki, J., dissenting); 1967 Md. Laws, Chap. 152, § 86 (stating the purpose of the Uninsured Employer's Fund).[8] The Fund primarily receives its funds from assessments collected under the Workers' Compensation Act. It also receives interest and investment income derived from those funds. § 10–314.[9] The General Assembly intended generally to maintain a balance within the Fund of between $3,000,000 and $5,000,000 by directing the Director of the Fund to suspend collection of assessments against employers and insurers when the Fund's balance equals $5,000,000 and commence collection of the assessments when the balance is less than, or approaches within a three month projection, $3,000,000.00. § 9–1011(a) & (b).[10] When the Commission grants an award against an uninsured employer, it assesses a penalty against that employer to be paid to the Fund.[11] § 9–1005. The Fund also is subrogated to the rights of claimants and uninsured employers in order to assist it in recouping moneys disbursed by the Fund to claimants where a third party ultimately is determined to be liable for those payments. §§ 9–1003–9–1004.

---

8. Former Chief Judge Gilbert of the Court of Special Appeals and Robert Humphreys characterized the Fund as "the most 'slippery fish'" in the Workers' Compensation Act. Gilbert & Humphreys, *supra*, § 2.2–3 at 24.

9. The Fund also may receive money by gift or reimbursement from the federal government as reimbursement for payments from the Fund. § 10–214.

10. Prior to a 1999 amendment, those thresholds were established at $2,500,00 and $1,000,000, respectively. 1999 Md. Laws Ch. 316.

11. The Fund has other sources of revenue related to awards from the Commission to claimants and their dependents. §§ 9–1007, 9–1008.

■ The Fund's obligation to pay workers arises not from an award of compensation by the Commission, but from § 9–1002 of the Labor and Employment Article. There are procedural steps within that statute necessary to be accomplished in order to trigger the Fund's obligation to pay. The statute states, in pertinent part, as follows:

§ 9–1002—Payment from the Uninsured Employer's Fund.

(a) *In general.*—An award is payable out of the Fund in accordance with this section.

(b) *Default.*—Unless an application for review has been timely filed under subsection (g) of this section or a notice of appeal timely served,[12] an employer is in default on a claim by a covered employee or the dependents of a covered employee if the employer fails to:

\* \* \* \*

(3) pay compensation in accordance with an award within 30 days after the date of the award.

\* \* \* \*

(d) *Payment; notice of objection.*—(1) On receipt of a notice of default, an employer promptly shall pay the award.

(2) To object to an award, the employer, within 30 days after receipt of the notice of default, shall notify the Commission of the reasons why the employer objects to the award.

(3) The notice of objection by the employer to the Commission serves as an application for review under subsection (g) of this section.

(e) *Application for payment from Fund.*—If the employer does not pay the award and does not notify the Commission of its objection to the award in accordance with subsection (d) of this section, the covered employee or the dependents

---

12. Generally, taking an appeal does not stay an order for compensation. § 9–741.

of the covered employee may apply to the Director for payment from the Fund.

(f) *Payment or application for review.*—On receipt of an application for payment, the Fund may:

(1) pay the award; or

(2) apply for review under subsection (g) of this section.

(g) *Procedure; review.*

(1) The provisions of Subtitle 7 of this title about procedure and the right to appeal apply to:

(i) a covered employee or the dependents of a covered employee who file a claim;

(ii) the uninsured employer; and

(iii) the Fund.

(2) The right of review of the Fund includes:

(i) raising issues;

(ii) discovery; and

(iii) a hearing before the Commission.

■■■ The Fund contends that § 9–1002(b), read with § 9–1002(g), operated to stay the Fund's obligation to pay compensation to Danner pursuant to the 14 June 2002 order because an application for review and a subsequent appeal were timely served by the Fund regarding the reserved issue of whether NWJ was the statutory employer of Danner. Under those circumstances, the Fund argues, the "employer" cannot be "in default," within the meaning of § 9–1002(b), for two reasons. First, had NWJ been adjudicated to be a statutory employer, that decision would have placed NWJ in the shoes of Danner's actual employer, Stivers. Because a demand for payment of benefits was not made to NWJ, the thirty day time period for default by the employer could not have run.[13] On a second, more procedural tack, the mere fact that the Commission had not adjudicated NWJ's status (and the Fund ultimately ap-

---

**13.** Under § 9–508, if NWJ were found to be a statutory employer it would be liable to the employee for any compensation award.

pealed the adverse determination) precluded the Fund's obligation from arising.

Danner counters that Stivers was in default because he refused to make payment within thirty days following receipt of notice of the 14 June 2002 award of temporary total disability (TTD) benefits, a final order. That award was not contested on appeal, rendering § 9–1002(g) inapplicable here.

 Section 9–1002(b) states there is no "default" by an employer if there is a timely application for review to the Commission or a notice of timely appeal served.[14] This provision does not operate regarding Danner's TTD award, however, in the manner the Fund contends. Although including the descriptive term "temporary," a temporary total disability benefits award describes the quantity of time the claimant is deemed totally disabled and entitled to receive benefits, not whether the award is an interlocutory order. *Great Am. Ins. Co. v. Havenner,* 33 Md.App. 326, 331, 364 A.2d 95, 98 (1976); §§ 9–618–622. The award of TTD benefits was a final, appealable order because it finally adjudicated Danner's legal right to TTD benefits. *Id.* at 332, 364 A.2d at 99; *see Montgomery County v. Ward,* 331 Md. 521, 528–29, 629 A.2d 619, 623 (1993) (holding that action of administrative agency is final if "it determines or concludes the rights of the parties ...".) (quoting *Md. Comm'n on Human Rel. v. Balt. Gas & Elec. Co.,* 296 Md. 46, 56, 459 A.2d 205, 211 (1983)); *see Paolino v. McCormick & Co.,* 314 Md. 575, 583, 552 A.2d 868, 871–72 (1989) (holding order denying TTD benefits finally adjudicated claimant's potential legal rights was final and appealable). Neither Stivers nor the Fund appealed this award.

 The Fund argues that it could not have appealed the 14 June 2002 order because it was not ordered thereby to pay compensation. The Fund, however, may appeal an order by the Commission if it is aggrieved by that order. The Fund

---

14. Stivers, Danner's employer, did not pay within the thirty day time period prescribed in § 9–1002.

is aggrieved when the claimant satisfies its obligation of application to the Fund under § 9–1002(e) and makes demand for payment. That occurred in this case when Danner's counsel sent the Fund a letter, dated 17 July 2002.[15] Neither Stivers nor the Fund timely raised any issue concerning the legitimacy or amount of that award.

The Fund claims, however, that the deferred administrative adjudication of the issue of whether NWJ was Danner's statutory employer foreclosed the occurrence of a default under § 9–1002(b) because it believes that NWJ, as an alleged statutory employer, also should be considered an "employer" within the meaning of § 9–1002(b). In *Para v. Richards Group of Wash. Ltd. P'Ship*, 339 Md. 241, 252, 661 A.2d 737, 743 (1995), we explained that the statutory employer provision of the Workers' Compensation Act is for:

the protection of the injured worker who might otherwise receive no compensation for work-related injuries if the workers' immediate employer had not obtained workers'

---

**15.** The Fund, at oral argument, argued, for the first time according to our review of the record, that the notice requirements to the uninsured employer under § 9–1002(c) & (d) were not completed as a necessary prerequisite to a proper application to the Fund for payment. The Fund's argument properly presented to us is that the delay in resolution by the Commission of NWJ's status precluded the existence of a final order and that the Fund's continuing appeal of the decision further precluded its obligation to pay benefits. Moreover, the Fund stated before the Commission during the 26 November 2002 hearing that Danner had complied with all the required rules for the payment:

[Commission]: And all the other rules were complied with, payments were requested and payment denied, is that correct?

[The Fund]: Yes, the Fund is not going to pay.

We do not address the notice deficiency argument that was neither part of the Fund's Petition, nor briefed. Md. Rule 8–131(b); Md. Rule 8–504(a)(5).

In addition, we note that it appears that the intent of the notice requirement is not to notify the Fund of a pending application for benefits, but to notify the uninsured employer that its business license may be suspended and the Fund's right to subrogation. It also serves as a second notice that the uninsured employer's payment is overdue (assuming the claimant's claim for benefits is the first instance of notice) and triggers the uninsured employers right to review under § 9–1002(g). § 9–1002(c); *see* Gilbert & Humphreys, Jr., *supra*, at § 14.3–1 at 300.

compensation coverage and had little resources to pay damages in a personal injury action.

Those provisions permitted the principal contractor to be considered as "an employer" of the subcontractors' workers. *Id.* at 253, 661 A.2d at 743–44. The Fund's view would embrace the term "statutory employer" within the meaning of "employer" in the statute.

The Fund's view may not be reconciled with the language of the statute or the undisputed facts of the present case. Danner had an employer, Stivers, regardless of the resolution of NWJ's status. Although the issue of whether a statutory employer existed, if resolved affirmatively, could relieve the Fund ultimately from the obligation to continue to pay the compensation order, Danner's "employer" at the time of the award was Stivers. Moreover, the potentiality for NWJ to be found to be Danner's statutory employer should not provide the basis for the Fund to avoid, delay, or defer its obligation to pay because the Fund is entitled to full subrogation rights should it pay benefits to a claimant and later gain the right to recover the payment of those benefits from a statutory employer.[16] Hence, the Fund subsequently could recover from NWJ, if, as, and when the latter was determined to be liable, for any payments the Fund made previously to Danner as the result of the 14 June 2002 Commission order. Given that both

---

16. The Workers' Compensation Act allows the Fund to recover from a third party or the party liable for the workers' compensation payments made by the Fund:

§ 9–1003—**Subrogation to rights of claimant.**
(a) *In general.*—If the Fund makes payment to a covered employee or the dependents of a covered employee as directed by the Commission, the Fund is subrogated to the rights of the covered employee or dependents against the uninsured employer.
§ 9–1004—**Subrogation to rights of uninsured employer.**
(a) *In general.*—If the Fund pays compensation to a covered employee or the dependents of a covered employee, the Fund is subrogated to the rights of the uninsured employer under this title.
(b) *Recovery by Fund.*—If the Fund and the uninsured employer both have paid compensation to or on behalf of a covered employee or the dependents of a covered employee, the Fund shall apply any money that it recovers from a third party:
(1) first, to repayment of the award paid by the Fund. . . .

the uninsured employer and the Fund presumably are better able to bear the cost of deferred adjudication of collateral issues than the injured worker who has been found to be entitled to relief, the adverse effects of an unpaid compensation award upon the injured worker are far greater than those of a compensation award paid contingently by the Fund.

The Fund further contends that a prior codification of the Workers' Compensation Act supports the alleged stay of its duty to make compensation payments where there is an outstanding issue. Former §§ 90 and 95 provided:

**§ 90. What awards payable from [F]und; procedure for payment.**

(a) *Notwithstanding any other provision of this article,* when a claim for compensation is filed by an employee, or in case of death, by his dependents, and the employer has failed (1) to secure the payment of compensation in accordance with § 16 of this article, (2) to make deposit of security in accordance with § 16 of this article and (3) to make payment of compensation according to the terms of any award within thirty days thereafter, then, *unless an application for review has been timely made or a notice of appeal has been timely served in the interim,* the award shall be payable out of the Fund created under this subtitle in the manner and subject to the conditions hereinafter set forth.

(b) Promptly after the elapse of the 30 day period provided in subsection (a) of this section the Commission shall notify the employer that the employer is in default. The employer shall make prompt payment of the award. If the employer objects to the award, he shall, within 30 days, notify the Commission of the reasons for the objection. The employer's notice to the Commission shall serve as application for review under the provisions of § 95 of this article.

(c) If the employer does not notify the Commission of his objection as provided in subsection (b) and does not make payment of the award, the claimant may apply to the

Director of the Uninsured Employers' Fund Board for payment from the Fund.

**§ 95. Application of provisions with respect to procedure and right to appeal to courts.**

The provisions of this article with respect to procedure and the right to appeal to the courts shall be reserved to the claimant, and to the uninsured employer, and to the [F]und.

Md.Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101 (repealed by 1991 Md. Laws, Chap. 8) (emphasis added). The Revisor's Note to the 1991 Volume of § 9–1002 provided that:

This section is new language derived without substantive change from former Art. 101, § 90(a) through (c) and § 95 ... [and] the former phrase "notwithstanding any other provision of this article," is deleted as surplusage.

 These sections are not different in substance from the provisions in the current § 9–1002. Neither former section addresses whether an outstanding issue not affecting directly the validity of the underlying compensation award would suspend the Fund's obligation otherwise to pay the award. Rather, we conclude that the previous codification supports our determination here that only the raising of issues directly related to the validity of the Commission order establishing the award of compensation, and any subsequent timely appeal of the relevant administrative adjudication of these issues, are the intended statutory triggers for deferring the Fund's obligation to pay. We found no language or legislative history to support the Fund's assertion that it had no obligation to pay Danner because of the pendency of a reserved issue collateral to the award of compensation. Our construction effectuates the Workers' Compensation Act's purpose of protecting the covered injured workers and providing timely relief to the injured employees. *Lutter*, 342 Md. at 345, 676 A.2d at 56 (stating "the legislature's purpose in creating the Fund was to protect injured workers whose employers failed, either willfully or negligently, to carry workers' compensation insurance for them."). To interpret the statute otherwise would allow a

myriad of indirect and collateral issues to impede the injured worker from timely receipt of needed compensation.[17]

### III.

On 26 November 2002 the Commission held a hearing regarding whether sanctions for non-payment of benefits to Danner should be assessed against the Fund. On 11 December 2002, the Commission ordered the Fund to pay to Danner a 40% penalty on the amount of benefits due Danner between 16 February 2001 and 12 November 2002. We agree with the Court of Special Appeals, however, and hold that there is no statutory authority for the Commission to assess a penalty against the Fund.

Danner contends that because the Fund failed to pay an award within 30 days, without good cause, it was liable for penalties under § 9–728. Our analysis of this question begins and ends with the imbedded issue of whether the Commission may assess penalties against the Fund as an employer or insurer.[18]

Section 9–728 (b) states:

*Within 30 days.*—If the Commission finds that an *employer or its insurer* has failed, without good cause, to begin

---

**17.** Indeed, there is cause now to doubt whether the Fund ultimately could prevail in avoiding its obligation to pay, even had it appealed timely the 14 June 2002 award. In *Gleneagles, Inc. v. Hanks*, 385 Md. 492, 869 A.2d 852 (2005), decided after the proceedings occurred in this case, we held that even a court's general equitable power was insufficient to authorize a stay of a workers' compensation benefit pursuant to § 9–741. We explained that the general purpose of the Workers' Compensation Act was to promote speedy relief to appropriate, aggrieved claimants. *Id.* at 500, 869 A.2d at 857.

> That humanitarian policy would be seriously hampered if weekly payments of compensation awarded by the [C]ommission could be suspended because of an appeal. In providing that an appeal should not be a stay the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted.
> *Id.*

**18.** Because we decide this issue based on whether the Fund came within the statutory definition of employer or insurer, we need not, and do not, reach Danner's claim that the Fund acted in bad faith.

paying an award within 30 days after the later of the date that the award is issued or the date that payment of the award is due, the Commission shall assess against the *employer or its insurer* a fine not exceeding 40% of the amount of the payment.

(Emphasis added).

Penalties may not be assessed against the Fund because it is not an enumerated party liable for penalties within the terms of § 9–728. The statute unambiguously states who may be held liable for penalties—1) employers [19] and 2) insurers. The Fund is neither. Although Subtitle 7 leaves the term "insurer" undefined, we read Subtitle 7 in harmony with the remainder of the Workers' Compensation Act scheme. An "authorized insurer" is defined as: "a stock corporation or mutual association that is authorized under the Insurance Article to provide workers' compensation insurance in the State." § 9–401(b).

Similarly, in Subtitle 3, an "insurer" is defined, in pertinent part, as:

(i) a stock corporation or mutual association that is authorized under the Insurance Article to provide workers' compensation insurance in the State;

(ii) the Injured Workers' Insurance Fund;

(iii) a governmental self-insurance group that meets the requirements of § 9–404 of this title;

(iv) a self-insurance group of private employers that meets the requirements of Title 25, Subtitle 3 of the Insurance Article; or

(v) an individual employer that self-insures in accordance with § 9–405 of this title.

Section 9–316(a)(3). The Fund does not fall within any of these definitions. Rather, the Fund is a state entity established under Title 10, Subtitle 3 of the Workers' Compensation Act. It does not operate for profit, as would a corporation or

---

**19.** The Fund cannot be Danner's "employer" because it was not paying for Danner's carpentry services at the time of his work-related injury.

a mutual association. *See* §§ 10–314–10–320 (governing operational aspects of the Fund). The definition of "insurer" under § 9–316 does not include the Fund, but specifically includes the Injured Workers' Insurance Fund, also established under Title 10 of the Workers' Compensation Act. When both the Injured Workers' Insurance Fund and the Fund are established under the same title and legislative scheme, but the General Assembly distinguishes between them by including one, but not the other in § 9–316, the exclusion lends support to the construction that the Legislature did not intend to make the Fund liable potentially for penalties.

## IV.

In its 11 December 2002 order, the Commission awarded Danner a $500 attorney's fee for his effort to bring to heel the Fund's recalcitrance in not paying the TTD award. The order purportedly applied § 9–734, which provides:

> If the Commission finds that a person has brought a proceeding under this title without any reasonable ground, the Commission shall assess against the person the whole cost of the proceeding, including reasonable attorney's fees.

We disagree with the Court of Special Appeals, concluding instead that the Commission's authority to make such an award is supported by the statute.

The threshold that must be crossed initially is whether the Fund's conduct was reasonable.[20] In *Stevens v. Rite–Aid Corporation,* 340 Md. 555, 557, 667 A.2d 642, 643 (1995), we explored the statutory language of § 9–734 while determining Stevens' alleged right to "reopen" her claim

---

**20.** Unlike § 9–728, which refers to specific categories of parties that may be liable for penalties (employers and insurers), § 9–734 has no categorical limitations on who may be susceptible to an attorney's fee award. It refers to those potentially liable for attorney's fees only as "persons." The Fund, therefore, comes within the definition of "person" in § 1–101(d), "an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation or other entity."

pursuant to § 9–736 of the Workers' Compensation Act. We explained that § 9–734 was codified originally as § 57 of Article 101 of the Maryland Code and that the re-codification of Article 101 into Title IX of the Labor and Employment Article was "not intended to have substantive effect" on the new codification. *Id.* at 561–63, 667 A.2d at 645–46; *see* Gilbert & Humphreys, Jr., *supra,* at § 2.3 at 34. An attorney's fee awarded pursuant to § 9–734 is a sanction against the conduct of a party acting without reasonable ground. *Stevens,* 340 Md. at 564, 667 A.2d at 646. Although § 9–734 is titled as "Frivolous Proceedings," it is clear from the intent of the re-codification that the title is merely to distinguish the sanction portion of an award of an attorney's fee in § 57 from the general provision permitting the award of an attorney's fee found in § 9–731. We need not decide whether the Fund acted frivolously in order to affirm the award of the attorney's fee under § 9–734.

It is clear from the transcript of the 26 November 2002 hearing that the Commission held that the Fund did not have any reasonable ground for withholding payment to Danner of the 14 June 2002 award. The Commission refused to accept the Fund's assertion that a hearing on 13 September 2002 regarding the status of NWJ and the subsequent appeal of the resultant adverse order was a timely or legitimate attempt to postpone the Fund's obligation to pay in the face of Danner's demand letter of 17 July 2002.

Danner argues that the Fund acted unreasonably in refusing to pay him the benefits the Commission had awarded. The Fund argues that it did not pay Danner merely because it reasonably interpreted § 9–1002 to operate to abate its obligation to pay Danner. It proffered to the Commissioner that its ongoing contention as to NWJ and its appeal regarding the Commission's resolution of NWJ's status was a reasonable ground for it to believe it had no obligation to pay.

In this case, the Circuit Court rejected the contention (and agreed with the Commission) that the Fund had no reasonable grounds for proceeding with a lengthy administrative chal-

lenge and later an appeal of a collateral issue as a basis for not paying Danner's TTD award. The Fund did not meet its burden before the Commission to demonstrate that it had an actual, reasonable ground to decline or defer payment of Danner's award. The Circuit Court, in rejecting the Fund's motion for summary judgment, left the Commission's order for a $500 attorney's fee intact. We shall not re-weigh facts considered before the Commission. We have stated often that provisions of the Workers' Compensation Act "should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *E.g., Gleneagles,* 385 Md. at 496, 869 A.2d at 855; *Harris,* 375 Md. at 57, 825 A.2d at 387; *Mayor of Balt. City v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995). Both the public policy concerning the plight of the unpaid (and potentially unable to work) claimant and the statutory language of the Act support the timely payment of benefit awards. The Fund's statutory interpretation in this case, though found erroneous ultimately, may have been a reasonable argument to maintain if the Fund had no means to recoup from the uninsured employer or other responsible third party its payment of funds to the claimant if paid contingently. The Circuit Court did not err as a matter of law in denying the Fund's motion for summary judgment on this issue.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED REGARDING ATTORNEY'S FEE AWARD, OTHERWISE AFFIRMED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS TO ENTER JUDGMENT CONSISTENT WITH THIS OPINION AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY TO ENTER JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE UNINSURED EMPLOYERS' FUND.